UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Adventure Creative Group, Inc., | File No. 16-cv-2532 (ECT/SER) |
| Plaintiff, | |
| v. | |
| CVSL, Inc., a Florida corporation d/b/a JRJR Networks; Your Inspiration at Home Pty Ltd, an Australian proprietary limited company; Your Inspiration at Home, Ltd, a Nevada corporation; Inspired Portfolio Pty Ltd., an Australian proprietary limited company; and CVSL YIAH Pty Ltd., an Australian proprietary limited company, | **OPINION AND ORDER** |
| Defendants. | |

James B. Dickinson, Koenig Dickinson & Dalluge, PLC, Long Lake, MN, for Plaintiff.

Adventure Creative Group seeks entry of a default judgment in an amount up to $16,350,000 against Your Inspiration at Home Pty Ltd ("YIAH"), one of several business organizations it sued in this copyright-infringement case. Adventure arrives at this sum by multiplying the number of works it says YIAH infringed (109) by the maximum statutory damage award available for willful infringement ($150,000). If a default judgment is entered against YIAH, then Adventure confirmed at the hearing on this motion that it intended to dismiss its claims against all other Defendants. Adventure also seeks recovery of its attorneys' fees and costs incurred in bringing its motion. Adventure's default-

judgment motion will be granted, but in an amount much less than Adventure seeks. To summarize, registration is a prerequisite to obtaining statutory damages, and Adventure identifies two registered works in its complaint and submissions—a catalog and a video. Adventure reaches the number of works it says YIAH infringed (109) by separately counting individual photographs and text removed from each registered work. But, as it turns out, the law does not permit this approach on the facts presented here. A default judgment will be entered against YIAH in the amount of $300,000. Adventure's claims against the remaining defendants will be dismissed, and Adventure's motion for attorney's fees and costs will be granted in the amount requested.

The basic process for determining whether a default judgment should be entered is straightforward. The entry of default[1] means that "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure: Civil* § 2688.1 (4th ed. & April 2019 Update) (footnotes omitted). Next, it must be determined whether the taken-as-true factual allegations of the complaint "constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." *Marshall v. Baggett*, 616 F.3d 849, 852 (8th Cir. 2010) (quoting *Murray v. Lene*, 595 F.3d 868, 871 (8th Cir. 2010)). If the taken-as-true allegations of the complaint constitute a legitimate cause of action, then the amount of the

---

[1] The Clerk properly entered default with respect to all Defendants except CVSL, Inc. ECF No. 95 (entry of default); Dec. 27, 218 Order at 2–3 [ECF No. 106] (explaining procedural history justifying entry of default, citing relevant authorities, and vacating entry of default as to CVSL, Inc. because it previously had filed a bankruptcy petition).

2

default judgment must be ascertained. *Hagen v. Sisseton-Wahpeton Cmty. Coll.*, 205 F.3d 1040, 1042 (8th Cir. 2000).[2]

Start with the factual allegations of the complaint that will be taken as true. Adventure is an "advertising agenc[y] in the Twin Cities." Am. Compl. ¶ 9 [ECF No. 21]. Adventure provides "design services including providing its expertise in such areas as brand identity and positioning, photography and style as part of the brand identity, log[o], tagline verbiage, iconography illustrations style, packaging, website and label design and video." *Id.* Adventure and YIAH executed a contract entitled "Agreement to Provide Marketing Services." *Id.* at Schedule 1 at 2, 6 ("Agreement") [ECF No. 21-2]; *see also* Am. Compl. ¶ 10. The Agreement had an effective date June 19, 2012. Agreement at 2. The Agreement required Adventure to "provide YIAH the standard services of an advertising agency, such as consulting, creative design, copywriting, packaging design, public relations, social media and strategic planning." *Id.* For Adventure's services, the Agreement required YIAH to "pay to Adventure a sum (the "Fee") equal to five percent (5%) of gross sales of YIAH (including sales by any of its affiliates or subsidiaries selling or marketing the same or similar products)." *Id.* The Agreement required YIAH to pay

---

[2] When, as here, a court is asked to enter a default judgment, it may conduct hearings to establish the amount of damages or to establish the truth of allegations, "preserving any federal statutory right to a jury trial." Fed. R. Civ. P. 55(b)(2). "[T]he Seventh Amendment provides a right to a jury trial on all issues pertinent to an award of statutory damages under § 504(c) of the Copyright Act, including the amount itself." *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 355 (1998). Perhaps in some copyright-infringement cases these authorities might require empanelment of a jury to determine an award of statutory damages. This cannot be one of those cases, however, because Defendants waived their right to a jury trial. Stip. ¶ 1 [ECF No. 53]; March 6, 2017 Order ¶ 1 [ECF No. 55].

3

these sums "within 30 days of the end of each [calendar] quarter." *Id.* The Agreement also contained a provision regarding the ownership of intellectual property:

> Subject to the license below, all written or other expressions of Adventure's work pursuant to this Agreement, whether performed separately or in conjunction with YIAH, including without limitation written copy, photographs, images, graphics, audio, video, means of development, products, designs and derivative works or any other results of the services performed by Adventure in connection with this Agreement ("Work Product"), shall be the property of Adventure[], and YIAH hereby agrees to assign, and does hereby assign, to Adventure all worldwide rights, title and interest in and to the Work Product developed or hereafter developed during this Agreement, provided that: (a) during the Fee Term, so long as YIAH is in compliance with this Agreement, including it is current on paying the Fee, Adventure hereby grants to YIAH a worldwide limited license to use the Work Product for the purposes contemplated by this Agreement and by the parties for the specific Work Product created hereunder; and (b) after the end of the Fee Term, so long as YIAH has complied with all terms of this Agreement, including without limitation paying all Fees due, Adventure agrees to then transfer and assign to YIAH all ownership rights in the Work Product which it prepared exclusively for YIAH hereunder.

Agreement at 3; *see also* Am. Compl. ¶¶ 14–16 (summarizing parts of this provision). Adventure developed Work Product as defined in this provision, including two works with registered copyrights: a "'Your Inspiration At Home' Product/Recruiting Catalog which included 29 pages of print materials, including but not limited to text, photograph(s), compilation, editing and artwork, Registration Number: TX0007766577; and 'Your Inspiration At Home' Consultant Recruitment Video, Registration Number: PA0001865255." Am. Compl. ¶ 21. At some point prior to Adventure's commencement of this case, YIAH stopped paying under the Agreement and did not allow Adventure to

4

"conduct an independent audit of [YIAH's] gross sales as provided for in the Agreement." *Id.* ¶ 28. After it stopped paying under the Agreement, YIAH continued to use Adventure's works. *Id.* ¶ 29. In particular, YIAH copied all or "selected pieces of" Adventure's copyrighted works and published and utilized them "to promote and generate business for their own monetary purposes." *Id.* ¶¶ 36, 43.

These taken-as-true allegations constitute a legitimate cause of action for copyright infringement.[3] "The Copyright Act entitles a copyright owner to institute a civil action for infringement of" its "'original works of authorship.'" *Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881, 887 (2019) (quoting 17 U.S.C. § 102(a); citing 17 U.S.C. § 501(b)). "Before pursuing an infringement claim in court, however, a copyright claimant generally must comply with [17 U.S.C.] § 411(a)'s requirement that 'registration of the copyright claim has been made.'" *Id.* To prevail on a claim of copyright infringement under § 501 of the Copyright Act, a plaintiff must show "(1) ownership of a valid copyright and (2) copying of original elements of the copyrighted work." *Warner*

---

[3] Adventure asserts two claims in its Amended Complaint, the first for breach of contract and the second for copyright infringement. The breach-of-contract claim is not at issue here because it was resolved separately in a different forum. In January 2017, the Court dismissed Adventure's breach-of-contract claim based on the doctrine of "forum non conveniens" and retained jurisdiction over the copyright-infringement claim. ECF No. 50 (Nelson, J.). The breach-of-contract claim was then litigated in Minnesota District Court, Crow Wing County. Those proceedings concluded on June 28, 2018, with the entry of a default judgment in Adventure's favor against all Defendants "jointly and severally" in the amount of $460,213.26. Mitchell Aff., Ex. B at 9 [ECF No. 109-2]. Of this amount, $403,362.13 was intended to compensate Adventure for delinquent licensing fees "for the four quarters of 2016," and $56,851.13 was intended to compensate Adventure for its attorney's fees and costs incurred in that action. *Id.* at 7, 8. Thus, Adventure's copyright-infringement claim is the only cause of action at issue in its default-judgment motion.

*Bros. Entm't v. X One X Prods.*, 644 F.3d 584, 595 (8th Cir. 2011) (citation omitted). Adventure's complaint plainly and plausibly pleads these elements. The complaint identifies two registered works—a catalog and a video. Am. Compl. ¶ 21. It alleges facts establishing Adventure's ownership of these works. *Id.*, Agreement at 3; *see also* Am. Compl. ¶¶ 14–16, 21. And it alleges that YIAH copied all or "selected pieces of" Adventure's copyrighted works and published and utilized them "to promote and generate business for their own monetary purposes." *Id.* ¶¶ 36, 43.

A copyright owner who proves infringement may recover either the "owner's actual damages and any additional profits of the infringer," or "statutory damages." 17 U.S.C. § 504(a). Here, Adventure seeks statutory damages. *See generally* Mem. in Supp. [ECF No. 111]. A copyright owner may elect to recover "statutory damages for all infringements involved in the action, with respect to any one work . . . in a sum of not less than $750 or more than $30,000." 17 U.S.C. § 504(c)(1). If the copyright owner proves the infringement was willful, then the maximum available amount of statutory damages increases to $150,000 per copyright infringed. 17 U.S.C. § 504(c)(2); *see also Pearson Educ., Inc. v. Almgren*, 685 F.3d 691, 693 n.3 (8th Cir. 2012). "[W]hen defendant's work copies various separate portions or passages of plaintiff's work, but all those portions are protected under a single copyright, then minimum damages are not to be multiplied by reason of the several, separately copied [portions or] passages." 4 M. Nimmer & D. Nimmer, *Nimmer on Copyright* § 14.04[E][1][b][i] (2018). "[I]n determining whether more than one 'work' has been infringed for the purpose of multiple statutory damages awards, 'all the parts of a compilation or derivative work constitute one work.'" *Id.*

6

(quoting 17 U.S.C. § 504(c)(1)). "The prevailing reading in the circuits is . . . [that] under § 504(c) the total number of 'awards' of statutory damages that a plaintiff may recover in any given action against any single defendant depends on the number of *works* that are infringed and the number of individually liable *infringers* and is unaffected by the number of *infringements* of those works." *Venegas-Hernandez v. Sonolux Records*, 370 F.3d 183, 194 (1st Cir. 2004); *see also Nat. Hair Growth Ctrs. of Ariz., LLC v. Edmund*, No. 3:19-cv-00026-H-BGS, 2019 WL 2249976, at *6 (S.D. Cal. May 23, 2019) ("[E]ach work infringed may form the basis of only one award, regardless of the number of separate infringements of that work.") (quoting *Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*, 658 F.3d 936, 946 (9th Cir. 2011)).

Here, Adventure identifies two registered works—the catalog and video—that YIAH infringed. Adventure contends nonetheless that "YIAH has used 71 separate images from the catalog and 38 separate images and text from the video," and that each of these 109 "separate images and text" should be counted as a separate work. Mem. in Supp. at 10. To support this argument, Adventure relies primarily on *Playboy Enters., Inc. v. Sanfilippo*, No. 97-0670-IEG (LSP), 1998 WL 207856 (S.D. Cal. Mar. 25, 1998). In that case, Playboy alleged that an individual (Sanfilippo) infringed its copyrights in 7,475 images by publishing and selling access to those images through a website. *Id.* at *1. Playboy owned registered copyrights "for all of the disputed images," *id.* at *2, and sought statutory damages with respect to Sanfilippo's infringement of each work, *id.* at *3–5. Sanfilippo argued that his liability for statutory damages should be reduced because "he did not consider each of the images to amount to a separate copyright violation." *Id.* at *5.

7

Specifically, Sanfilippo argued "that because the images were collectively included in one of plaintiff's copyrighted magazines, then [he] should only be liable for a singular violation of that particular magazine's copyright and not for separate violations of each image included in that magazine issue." *Id.* The court rejected Sanfilippo's argument:

> Although each of these images may have appeared in a singular issue of one of plaintiff's copyrighted publications, these images are subject to re-use and redistribution in accordance with various licensing arrangements. Furthermore, each image represents a singular and copyrightable effort concerning a particular model, photographer, and location. The fact that many of these images appeared together should not detract from the protection afforded to each individual effort.

*Id. Playboy* is distinguishable from Adventure's claims in this case. Playboy owned a registered copyright for every one of the 7,475 sued-upon images. *Id.* at *2. Adventure alleges only that it has copyright registrations in the catalog and video; there is no evidence Adventure owns copyright registrations for any of the individual images and text used by YIAH. But registration is a prerequisite to an infringement suit. 17 U.S.C. § 411(a); *Fourth Estate*, 139 S. Ct. at 886–87. There is no evidence showing that the images and text YIAH used are subject to other licensing agreements or that Adventure and YIAH contemplated separate use of these materials. The Agreement suggests otherwise. Had YIAH complied with its terms, the Agreement provided that Adventure would "then transfer and assign to YIAH all ownership rights in the Work Product which it prepared exclusively for YIAH hereunder." Agreement at 3. The law permits an award of statutory damages on the two registered works—the catalog and video—and not on the 109 separate images and text Adventure says YIAH used.

Among the factors that may be considered to determine an appropriate statutory-damage award "are the licensing expenses saved and profits reaped by defendants from the infringements, the revenues lost by plaintiffs as a result of defendants' infringements, and the infringers' state of mind, *i.e.*, willful, knowing or innocent." *Halnat Publ'g Co. v. L.A.P.A., Inc.*, 669 F. Supp. 933, 937 (D. Minn. 1987) (MacLaughlin, J.); *see also Broad. Music, Inc. v. Edcon Enters., LLC*, No. 4:11-CV-1950-JAR, 2012 WL 5508485, at *2 (E.D. Mo. Nov. 14, 2012) (same); *see also Mango v. BuzzFeed, Inc.*, 356 F. Supp. 3d 368, 374 (S.D.N.Y. 2019) (identifying factors that may be considered to determine an award of statutory damages as "(1) the infringer's state of mind; (2) the expenses saved, and profits earned, by the infringer; (3) the revenue lost by the copyright holder; (4) the deterrent effect on the infringer and third parties; (5) the infringer's cooperation in providing evidence concerning the value of the infringing material; and (6) the conduct and attitude of the parties") (quoting *Bryant v. Media Right Prods., Inc.*, 603 F.3d 135, 144 (2d Cir. 2010)). A copyright holder seeking to establish willful infringement must show that the infringer had knowledge that its conduct constituted infringement or that it recklessly disregarded that possibility. *RCA/Ariola Int'l, Inc. v. Thomas & Grayston Co.*, 845 F.2d 773, 779 (8th Cir. 1988); *Broad. Music, Inc. v. City & Country Tavern, LLC*, Civil No. 15-3441 (JNE/BRT), 2016 WL 3566209, at *3 n.1 (D. Minn. June 27, 2016) (citing *RCA/Ariola*, 845 F.2d at 779). Courts have found willful infringement when, for example, a defendant engages in infringing activity after receiving warning that the activity constitutes infringement and from the fact of a defendant's default. *Chi–Boy Music v. Charlie Club, Inc.*, 930 F.2d 1224, 1227–28 (7th Cir. 1991); *Philpot v. Music Times LLC*, No. 16cv1277

(DLC) (DF), 2017 WL 9538900, at *7 (S.D.N.Y. Mar. 29, 2017), *R&R adopted*, 2017 WL 1906902 (S.D.N.Y. May 9, 2017); *Graphic Styles/Styles Int'l LLC v. Kumar*, Civil No. 14-4283, 2016 WL 299083, at *5 (E.D. Pa. Jan. 25, 2016).

Here, the record establishes that YIAH's infringement was willful. The infringement was widespread, not isolated or sporadic. Am. Compl. ¶ 37; Mitchell Aff. ¶¶ 19–21, 23 [ECF No. 109]. The infringement continued after Adventure "made numerous demands" to YIAH to stop. Am. Compl. ¶ 24. YIAH's conduct in this case shows willfulness with respect to the infringement. Though it appeared initially, YIAH (and every other Defendant) has ceased to defend since July 2018. *See* ECF Nos. 91–92. Though YIAH retained and was represented in this case by several attorneys at various times, it (and the other Defendants) placed all of those attorneys in a position of concluding that it was necessary to file motions to withdraw (and all of those motions were granted). ECF Nos. 56, 63, 66, 69, 74, 91. An order to obtain new representation on or before August 3, 2018 was disregarded, prompting the Clerk's entry of default. ECF No. 91 (Order); ECF No. 95 (entry of default). At the hearing on this motion, Adventure's counsel represented that Adventure's discovery requests were never answered. The licensing fees that were paid under the Agreement suggest that a significant statutory-damages award is appropriate here. The fees paid from the fourth quarter of 2013 through the end of 2015 total $806,724.25. Mitchell Aff. ¶11; *id.* Ex. B at 4, ¶ 11. As noted earlier, the amount awarded by the Crow Wing County District Court to compensate Adventure for delinquent licensing fees "for the four quarters of 2016" was $403,362.13. *Id.*, Ex. B at 6. Based on

these considerations, a statutory damages award of $150,000 for each of Adventure's two infringed copyrights is justified.

A court may, at its discretion, award costs and attorneys' fees to a prevailing party in a copyright infringement action. 17 U.S.C. § 505. That discretion is "to be exercised in an evenhanded manner by considering factors such as whether the lawsuit was frivolous or unreasonable, the losing litigant's motivations, the need in a particular case to compensate or deter, and the purposes of the Copyright Act." *Killer Joe Nevada, LLC v. Does 1-20*, 807 F.3d 908, 911 (8th Cir. 2015) (quoting *Action Tapes, Inc. v. Mattson*, 462 F.3d 1010, 1014 (8th Cir. 2006); *see Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 432 (1984) ("[T]he ultimate aim" of the Copyright Act is "to stimulate artistic creativity for the general public good."). If fees are awarded, the Eighth Circuit employs the lodestar method to determine a reasonable fee. *Pinkham v. Camex, Inc.*, 84 F.3d 292, 294 (8th Cir. 1996). In determining a reasonable fee, the Court may, but is not required to, consider the following factors: (1) the time and labor required; (2) the novelty and difficulty of the question; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Hensley v. Eckhart*, 461 U.S. 424, 430 n.3 (1983). The fee is calculated by multiplying the number of hours reasonably expended by a reasonable hourly rate with the resulting total

presumed to be a reasonable fee subject to an upward or downward adjustment based upon the factors enumerated above. *Norwood Operating Co. v. Beacon Promotions, Inc.*, Civil No. 04-1390 (MJD/SRN), 2006 WL 3103154, at *3 (D. Minn. Oct. 31, 2006).

Here, Adventure seeks to recover only the attorneys' fees and costs it incurred in seeking default judgment, an amount of $8,369.50. This request is supported by documentation showing the tasks performed by Adventure's counsel, the amount of time associated with these tasks, and the fees charged for each. ECF No. 110. As Adventure justifiably observes, it "has not sought all of [its] fees and costs since the inception of this Federal action but should be entitled to the fees incurred with the instant motions at the very least." Mem. in Supp. at 13. Adventure's request is reasonable and supported. Given the legal and factual nature of Adventure's claims, Adventure's default-judgment motion required greater time relative to most default-judgment motions. Adventure's submissions were thorough, and the motion included an evidentiary hearing. And the hourly fee claimed by Adventure's counsel is reasonable given his experience.

At the hearing on the default-judgment motion, Adventure confirmed that, if it obtained a default judgment against YIAH, it intended to dismiss this action with respect to all other Defendants. Rule 41(a)(2) of the Federal Rules of Civil Procedure permits an action to be dismissed by court order at a plaintiff's request "on terms that the court considers proper." Dismissal of the non-YIAH Defendants is proper here because of the finality it provides to Adventure in this matter and because dismissal of those Defendants would not prejudice them.

**ORDER**

Based upon all the files, records, and proceedings herein, **IT IS ORDERED** that:

1. Plaintiff's motion for default judgment [ECF No. 113] is **GRANTED**. Plaintiff shall recover from Defendant Your Inspiration at Home Pty Ltd statutory damages pursuant to 17 U.S.C. § 504 in the amount of $300,000;

2. Plaintiff's motion for attorneys' fees and costs [ECF No. 117] is **GRANTED**. Plaintiff shall recover from Defendant Your Inspiration at Home Pty Ltd an award of $8,369.50 in attorneys' fees and costs.

3. Plaintiff's claims against Defendants CVSL, Inc., a Florida corporation d/b/a JRJR Networks; Your Inspiration at Home, Ltd, a Nevada corporation; Inspired Portfolio Pty Ltd., an Australian proprietary limited company; and CVSL YIAH Pty Ltd., an Australian proprietary limited company, are dismissed with prejudice pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: September 12, 2019          s/ Eric C. Tostrud
                                   Eric C. Tostrud
                                   United States District Court